IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Docket No. 1:23-cr-00224 |
| | ) | |
| v. | ) | ELECTRONICALLY FILED |
| | ) | |
| JONATHAN JOSEPH COPELAND, | ) | The Honorable Dabney L. Friedrich |
| | ) | |
| Defendant. | ) | |

**MOTION FOR DISCOVERY AND AN EVIDENTIARY HEARING IN SUPPORT OF DEFENDANT'S CLAIM OF SELECTIVE PROSECUTION AS IT RELATES TO COUNTS ONE THROUGH NINE**

AND NOW, comes Defendant, Jonathan Joseph Copeland (hereinafter "Mr. Copeland"), by and through his counsel, Komron Jon Maknoon, Esquire, and files this Motion for Discovery and an Evidentiary Hearing in Support of Defendant's Claim of Selective Prosecution as It Relates to Counts One Through Nine. In support thereof, he avers as follows:

**I. BACKGROUND**

1. On November 21, 2022, undersigned counsel respectfully entered his appearance on behalf of Mr. Copeland (*See* ECF Doc. No. 16).

2. On July 12, 2023, Mr. Copeland was indicted for an alleged violations of 18 U.S.C. § 231(a)(3) – Civil Disorder, 18 U.S.C. §§ 111(a)(1) and (b) – Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, 18 U.S.C. § 1752(a)(1) and (b)(1)(A) – Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. § 1752(a)(2) and (b)(1)(A) – Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, 18 U.S.C. § 1752(a)(4) and (b)(1)(A) – Engaging in Physical Violence in a Restricted Building or Grounds with a

1

Deadly or Dangerous Weapon, 40 U.S.C. § 5104(e)(2)(D) – Disorderly Conduct in a Capital Building, 40 U.S.C. § 5104(e)(2)(F) – Act of Physical Violence in the Capitol Grounds or Buildings, and §40 U.S.C. § 5104(e)(2)(G) – Parading, Demonstrating, or Picketing in a Capital Building (*See* ECF Doc. No. 29).

## II. LEGAL STANDARD

3. The government "may not pick and choose for the purpose of selecting expressions of viewpoint pleasing to it and suppressing those that are not favored." *United States v. Crowthers*, 456 F.2d 1074, 1078 (7th Cir. 1972).

4. The Fifth Amendment prohibits the federal government from pursuing criminal charges against a citizen that amount to a "'practical denial' of equal protection of law," and a claim of "selective prosecution" guards against this illegality. *United States v. Armstrong,* 512 U.S. 456, 465 (1996) (quoting *Yick Wo v. Hopkins,* 118 U.S. 356, 373 (1886)).

5. To prove a claim of selective prosecution, Defendant must show by "clear evidence" both discriminatory effect and discriminatory intent. *See Att'y Gen. of U.S. v. Irish People, Inc.,* 684 F.w2d 928, 932 (D.C. Cir. 1982); *see also Armstrong,* 517 U.S. at 465.

6. To produce evidence supporting a claim of selective prosecution, Defendant often requires discovery on this issue. *See* Johnathan J. Marshall, *Selective Civil Rights Enforcement and Religious Liberty,* 72 Stan. L. Rev. 1421, 1448 (2020).

7. To get discovery for a claim of selective prosecution, Defendant must offer "some evidence" tending to show both a discriminatory effect and a discriminatory intent. *United States v. Bass,* 536 U.S. 862, 863 (2002).

8.     To show discriminatory effect, Defendant must show "some evidence that similarly situated defendants . . . could have been prosecuted, but were not." *Armstrong,* 517 U.S. at 469; *Branch Ministries v. Rossotti,* 211 F.3d 137, 144 (D.C. Cir. 2000).

9.     "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Lewis,* 517 F.3d 20, 27 (1st Cir. 2008) (citing *Armstrong*, 517 U.S. at 469).

10.    A determination that others qualify as similarly situated hinges on whether the "circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decision with respect" to the comparator. *Rossotti,* 211 F.3d at 145 (quoting *Irish People, Inc.,* 684 F.2d at 946).

**III. ARGUMENT**

11.    Thousands of individuals were present at the United States Capitol Building on January 6, 2021, and only slightly over 1,100 people have been arrested in connection with these events, meaning that many individuals were not arrested or charged in connection with these events.

12.    Mr. Ray Epps of Arizona is one example of a person who was next to Mr. Copeland prior to entering the Capitol Building and is known to have instigated the events of January 6, 2021.[1]

13.    Mr. Epps "appears to have worked alongside several individuals – many of them suspiciously unindicted – to carry out a breach of the police barricades that induced a subsequent

---

[1] *Meet Ray Epps: The Fed-Protected Provocateur Who Appears to Have Led the Very First 1/6 Attack on the U.S. Capitol*, REVOLVER (October 25, 2021), https://www.revolver.news/2021/10/meet-ray-epps-the-fed-protected-provocateur-who-appears-to-have-led-the-very-first-1-6-attack-on-the-u-s-capitol/.

flood of unsuspecting MAGA protesters to unwittingly trespass on Capitol restricted grounds and place themselves in legal jeopardy."[2]

14.     While Mr. Epps was originally "Suspect 16" in the FBI's Washington Field Office's request for the public's help in identifying suspects from January 6, 2021, and Mr. Epps was featured on the FBI Capitol Violence Most Wanted List, Mr. Epps was removed from the FBI's Capitol Violence Most Wanted List on July 1, 2021.[3]

15.     It was not until September 18, 2023, that Mr. Epps was charged by Information at Case No. 1:23-cr-00321, ECF Doc. No. 1, with a violation of 18 U.S.C. 1752(a)(2) - Disorderly or Disruptive Conduct in a Restricted Building or Grounds.

16.     On September 20, 2023, a plea hearing was held during which Mr. Epps pled guilty to the aforementioned violation (*See* ECF Doc. No. 4 at Case No. 1:23-cr-00321).

17.     During Mr. Epps' plea hearing, prosecutors said that "aside from breaching the barricades outside the Capitol, Mr. Epps placed his hands on a giant Trump sign that the mob used as a battering ram against the police."[4]

18.     The government addressed Mr. Epps' behavior on January 6, 2021, in their "Statement of Offense" (*See* ECF Doc. No. 5 at Case No. 1:23-cr-00321).

19.     As mentioned during Mr. Epps' plea hearing, the Statement of Offense also illustrates that a metal "Trump" sign was being pushed "toward the line of officers standing between the rioters on the West Plaza and the Capitol building itself" (*See* ECF Doc. No. 5 at 9 at Case No. 1:23-cr-00321).

---

[2] *Id.*
[3] *Id.*
[4] *Ray Epps, Target of Conspiracy Theory, Pleads Guilty to Jan. 6 Misdemeanor,* The New York Times (September 20, 2023), https://www.nytimes.com/2023/09/20/us/politics/ray-epps-pleads-guilty.html.

4

20. Mr. Epps "briefly placed both of his hands on the sign's fabric and/or frame" and he "pointed forward, toward the line of police officers, several times" then "other rioters successfully pushed the sign into the group of police officers" (*See* ECF Doc. No. 5 at 9-10 at Case No. 1:23-cr-00321).

21. "While the officers were occupied with the sign, a group of rioters, including [Mr. Epps], pushed forward, leaning their bodies on each other" towards the police officers, and the officers felt so threatened they "responded by deploying chemical spray on the rioters" including Mr. Epps (*See* ECF Doc. No. 5 at 10 at Case No. 1:23-cr-00321).

22. Further, the government states "during [Mr. Epps'] time on Capitol grounds – indeed, both before and after his participation in the sign push described above - [Mr. Epps] made at least five attempts to deescalate conflicts" (*See* ECF Doc. No. 5 at 10-11 at Case No. 1:23-cr-00321).

23. Although Mr. Epps attempted to deescalate the conflicts, this does not negate the fact that Mr. Epps participated in the sign push, which successfully broke and scatter a police line, as clearly indicated by the government.

24. In general, a person violates Title 18 U.S.C. § 111(a)(1), if they "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." 18 U.S.C.A. § 111 (West).

25. Additionally, a person is in violation of Title 18 U.S.C. § 111(b), if they "in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury." 18 U.S.C.A. § 111 (West).

5

26. Based on the government's "Statement of Offense" it is evident that Mr. Epps at the very least opposed, impeded, intimidated, or interfered with the police officers, while they were engaged in official duties considering he not only participated in the sign push, but he also pushed forward towards the police officers threatening them to the point where Mr. Epps himself was sprayed with chemical spray.

27. Thus, under Title 18 U.S.C. § 111(a)(1), Mr. Epps should have been charged with assaulting, resisting, or impeding certain officers or employees.

28. Additionally, his participation in the sign push also qualifies as a violation of Title 18 U.S.C. § 111(b).

29. Mr. Copeland was next to Mr. Epps during the aforementioned sign push.

30. Mr. Copeland remembers Mr. Epps pushing the sign.

31. The government's "Statement of Offense" in *United States of America v. James Ray Epps, Sr.* supports Mr. Copeland's memory of Mr. Epps pushing the sign.

32. However, only Mr. Copeland was charged with a felony violation of 18 U.S.C. 111(a)(1) and (b) - Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, while Mr. Epps was charged with a misdemeanor violation of 18 U.S.C. 1752(a)(2) - Disorderly or Disruptive Conduct in a Restricted Building or Grounds.

33. Mr. Copeland states a claim for selective prosecution regarding Count Two of the Indictment, the sole felony count against Mr. Copeland.

34. Mr. Copeland recognizes that to date no selective prosecution claims by January 6th defendants have been sustained; however, he firmly believes that his case, at least in part, presents a colorable case of selective prosecution.

35.     Unlike other January 6th defendants whose selective prosecution motions have been rejected, Mr. Copeland does not attempt to compare himself to those who participated in the D.C. Climate Protests, Portland Protests, or Senate Confirmation Hearings Protests. *See, e.g., United States v. McHugh*, No. CR 21-453 (JDB), 2023 WL 2384444 (D.D.C. 2023); *United States v. Padilla*, No. CR 21-214 (JDB), 2021 WL 1964214 (D.D.C. 2023); United *States v. Brock*, 628 F. Supp. 3d 85 (D.D.C. 2022); *United States v. Judd*, 579 F. Supp. 3d 1 (D.D.C. 2021).

36.     Instead, Mr. Copeland compares himself to Mr. Epps who was standing next to Mr. Copeland outside of the Capitol Building, who "committed roughly the same crime under roughly the same circumstances" as Mr. Copeland but against whom the law has not been fully enforced as it was with Mr. Copeland.

37.     Mr. Epps serves as just one example of an individual who is "similarly situated" to Mr. Copeland who was not indicted to the extent of Mr. Copeland for similar actions.

38.     The existence of Mr. Epps, and the existence of others like him, who participated in the Capitol Breach but were not charged to the extent their actions warranted, demonstrates "some evidence" that Mr. Copeland was specifically targeted for selective prosecution.

### IV. CONCLUSION

39.     Defense respectfully requests permission to make timely amendments to the within motion upon the discovery of new information about known and unknown individuals who are "similarly situated" but were not indicted for the events which took place on January 6, 2021.

WHEREFORE, the defendant Jonathan Copeland, respectfully requests that this Honorable Court grant the Motion for Discovery and an Evidentiary Hearing in Support of Defendant's Claim of Selective Prosecution as It Relates to Counts One Through Nine.

Respectfully submitted,

*s/ Komron Jon Maknoon*

Komron Jon Maknoon, Esquire
PA I.D. No. 90466

MAKNOON & ASSOCIATES, LLC
438 Division St
Sewickley, PA 15143
(412) 201-1802
(412) 774-8424 (FAX)

kjm@maknoon-law.com

Attorney for Defendant, Jonathan Copeland