IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Docket No. 1:23-cr-00224 |
| | ) | |
| v. | ) | ELECTRONICALLY FILED |
| | ) | |
| JONATHAN JOSEPH COPELAND, | ) | The Honorable Dabney L. Friedrich |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OMNIBUS REPLY TO THE UNITED STATES' OMNIBUS OPPOSITION TO DEFENDANT JONATHAN JOSEPH COPELAND'S PRETRIAL MOTIONS**

AND NOW, to-wit, comes Defendant, Jonathan Joseph Copeland (hereinafter "Mr. Copeland") by and through his counsel, Komron Jon Maknoon, Esquire, and files this reply to the United States' Omnibus Response (*See* ECF Doc. No. 46) to Mr. Copeland's (1) Motion to Produce Evidence…Under Federal Rules of Evidence 404(b) and 609 (*See* ECF Doc. No. 37); (2) Motion *in Limine* to Preclude Unseen Signage, Fencing, or Other Barriers and to Preclude Arguments that Mr. Copeland is Guilty Based on the Actions of Others (*See* ECF Doc. No. 38); (3) Motion for Discovery (*See* ECF Doc. No. 39); (4) Motion for Early Disclosure of All "Jencks Act" Material (*See* ECF Doc. No. 40); (5) Motion to Require Law Enforcement Officers to Retain Rough Notes and Writings (*See* ECF Doc. No. 41); (6) Motion to Compel Government to Disclose Expert Witnesses (*See* ECF Doc. No. 42); (7) Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises to Government Witnesses (*See* ECF Doc. No. 43); and (8), the defendant's Selective Prosecution Motion (*See* ECF Doc. No. 44).

**I.     Reply to United States' Opposition to Mr. Copeland's Motion to Produce Evidence Pursuant to Fed. R. Evid. 404(b) and 609**

1

In its response to Mr. Copeland's Motion to Produce Evidence Pursuant to Federal Rules of Evidence 404(b) and 609 (*See* ECF Doc. No. 37), the government states that upon learning of any additional information, they will file a Motion in accordance with 404(b). To date, no Motion has been filed.

Undersigned counsel acknowledges that a "reasonable" notice shall be provided pursuant to 404(b) and respectfully requests the Court set a date when said notice is due.

In its reply, the government submitted evidence in compliance with Rule 609. Mr. Copeland intends to address this evidence through a *Motion in Limine.*

II. **Reply to United States' Opposition to Mr. Copeland's Motion to Preclude Unseen Signage, Fencing, or Other Barriers and to Preclude Arguments that he is Guilty Based on the Actions of Others**

In its opposition to Mr. Copeland's Motion to Preclude Unseen Signage, Fencing or Other Barriers and to Preclude Arguments that he is Guilty Based on the Actions of Others (*See* ECF Doc. No. 38), the government responds by indicating that unseen signage should be admissible to show the nature of his alleged crimes as a collective action.

First, the government argues that unseen signage, fencing, or other barriers is relevant to show the rioters' collective actions to prove disruption of Congress as it relates to Counts 5 and 7 of the indictment. The defense relies on the underlying motion and contends that any consideration of a "collective action" should be assessed within the framework of Rule 403, with particular attention to the government's obligation to meet the elements required for the offenses.

Second, the government argues that unseen signage, fencing, or other barriers are relevant to show the objective existence of a restricted building or ground, which relates to Counts 4 and 6 of the indictment. Under Title 18 U.S.C. § 1752(a)(1), the government is required to show that the defendant "knowingly enters or remains in any restricted building or grounds without lawful authority to do so." 18 U.S.C.A. § 1752 (West). Under Title 18 U.S.C. § 1752(a)(2), the

government is required to show that the defendant "knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." *Id.* Both counsel for the defense and the government concur that the government is allowed to introduce evidence such as signs, dispersal announcements, fencing, barricades, or any other barriers that were within Mr. Copeland's line of sight for the purpose of demonstrating his knowledge.

The government additionally asserts its obligation to establish the objective presence of a restricted building or grounds concerning Counts 4 and 6 in the indictment. The defense acknowledges the government's necessity to establish the *objective* existence of signage along Mr. Copeland's route but deems it superfluous to extend beyond this, as it would result in undue delays and constitute a time-wasting exercise under Rule 403.

The government states that Mr. Copeland's "presence in a violent mob is what disrupted Congress, and thus, his actions in joining a mob of others bears on his *means rea* for each of the charged offenses." *Id.* There is no doubt that Mr. Copeland lacked awareness of the complete nature and scale of the entire mob. It is possible that if there exists a combined impact that influences Mr. Copeland's *mens rea* while participating in a mob whose full scope he was unaware of, it could also be argued that the cumulative actions of Unidentified Agents/Undercover Operations similarly had an impact on the crowd as well as Mr. Copeland.

And lastly, the government addresses Counts 1 and 3 relating to Civil Disorder, which requires the government to show a public disturbance. The government claims that by "artificially limiting the presentation of evidence" would "unnaturally prevent the trier of fact from assessing all relevant evidence" (*See* ECF Doc. No. 46 at 6). The defense acknowledges the government's

requirement to establish a public disturbance, taking into consideration the balancing requirement under Rule 403.

### III. Reply to United States' Opposition to Mr. Copeland's Motion for Discovery

In its response to Mr. Copeland's Motion for Discovery, the government specifically addresses Mr. Copeland's request for "Information and Documentation Related to Unidentified Agents" and "Information and Documentation Related to D.C. Metropolitan Police Department Undercover Operations" (*See* Doc. No. 45 at 8-11).

Regarding Mr. Copeland's request for Information and Documentation Related to Unidentified Agents, the government claims that they are unaware of any undercover or government agents who may have participated in the facilitation of Mr. Copeland's alleged actions. The government states that this request is too broad, but "to the extent the defendant has proffered any evidence that a specific person prompted him to commit the crime or trespass into a restricted area, the government is unaware of any such person as it relates to Defendant's knowledge or path" (*See* ECF Doc. No. 46 at 7).

The approach to discovery should be viewed as a continuous process, commencing with broader and less specific requests in the initial stages and progressing towards requests that become more detailed as the case evolves and a defense strategy takes shape. Defense counsel should also make specific requests to preserve the record for appeal. When a discovery request is not specific enough to inform the government of items being sought or does not permit the court to determine whether material evidence has already been produced, the government's failure to disclose may not constitute a reversible error on appeal. *United States v. Doe*, 778 F.3d 814, 882 (9th Cir. 2015). Federal Rule of Criminal Procedure 16(a)(1)(E)(i) permits disclosure of documents of tangible items that are "material" to preparing a defense. In *United States v. Armstrong*, 517 U.S. 456, 462 (1996), the Supreme Court held that "material to the preparation

of the defendant's defense" under Rule 16 does not apply to documents that are material to claims that might constitute a "sword" to attack the charges; rather, Rule 16 discovery is limited to documents that are material to the defendant's "shield" to the government's case-in-chief. Calling materiality a "low threshold," the Ninth Circuit has held that "[i]information is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir.2013).

In cases where a discovery request lacks the necessary *specificity* to clarify the items being sought or doesn't allow the court to ascertain whether material evidence has already been provided, the government's failure to disclose may not amount to a reversible error in the context of an appeal, as established in *United States v. Doe*, 778 F.3d 814, 882 (9th Cir. 2015). Therefore, a good faith basis, further specificity, and materiality are addressed below:

A. <u>Information and Documentation Related to Unidentified Agents</u> – The Defense requests the disclosure of the identities of and any information or documentation relating to undercover and unidentified Central Intelligence Agency (CIA) agents, United States Military Personnel, government contractors, law enforcement, paid provocateurs, or the like who may have facilitated the provocation of the Defendant's alleged actions.

  1. Since the initiation of the release of discovery materials and subsequent independent in, it has come to light that undercover law enforcement officers and/or potentially unidentified "agents" were present on January 6, particularly within the vicinity of the Capitol. Moreover, certain behavior seems to either encourage, support, or enable unlawful actions among the crowd. The origin of this behavior, whether it stemmed from an organized plan or independent actions by individuals, remains uncertain.

      a. On January 14, 2022, as part of Global Production No. 10, GoPro footage captures Officer Tomasula who was stationed at the Capitol in an evidence-gathering capacity encouraging the crowd to advance up

the steps by yelling "Go! Go! Go! And "Keep going! Keep going!" On August 11, 2023, the government released an investigation report on Officer Nicholas Tomasula confirming he urged protestors to move forward. He also confirmed his infiltration into the Proud Boys and coordination with the FBI. (*See United States v. Pope*, 21-cr-00128, ECF No. 139 at 12-13 and ECF No. 90 at 2). Officer Tomasula was one of three undercover MDP officers who were among the Proud Boys on January 6 and were made available to defense attorneys (*See United States v. Nordean,* 21-cr-000175, ECF No. 748).

b. On April 6, 2023, more undercover MPD footage was released in global discovery, which included recordings by Detective Ricardo Leiva who was working alongside Officer Tomasula. In the footage, Detective Leiva is thanked by an individual to which Detective Leiva responds "absolutely man, you too, you gotta be here." (*See United States v. Pope*, 21-cr-00128, ECF No. 139 at 20). Additionally, during their investigation of Officer Tomasula, MPD Internal Affairs interviewed Detective Leiva. During this interview, Detective Leiva stated that he would run up to individuals breaking a window at the Capitol and say, "hey what's up man, you're doing an amazing job, awesome awesome awesome." *Id.*

c. The case of Officer Ryan Roe was described by Defendant William Pope in *United States v. Pope*, Case No. 1:21-cr-00128-RC in his Motion to Compel the Government to Produce all Materials Related to Undercover Police and to Produce Missing police Body Camera Recordings. Mr. Copeland adopts the statements made in this motion. On January 7, 2021, Twitter user @Twinity5 posted photos and video of a man who has been hashtagged #FenceCutterBulwark removing fencing on the west lawn of the Capitol Building.[1] In these photos and

---

[1] The full @Twinity5 tweet-thread can be found at https://twitter.com/Twinity5/status/1347346192229953537

        video, #FenceCutterBulwark can be seen communicating with a man holding a CanonXA40. MPD Officer Ryan Roe is known to have been undercover according to his Investigative File Report for January 6, 2021. In this report, he acknowledges recording the events using a Canon XA40. Video recorded and released in global discovery by Officer Roe shows #FenceCutterBulwark removing fencing in the same area @Twinity5 was recording. In this video, Officer Roe states "appreciate it brother." In his Motion to Compel, Mr. Pope states, "I have been able to synchronize Roe's footage to @Twinity5's No. 3 tweet video where #FenceCutterBulwark is removing fencing next to Officer Roe...These synchronized clips make it clear that Officer Roe was speaking to #FenceCutterBulwark (who was removing fencing) when Roe said, "appreciate it brother." (*See United States v. Pope*, 21-cr-00128, ECF No. 139 at 24). Upon further disclosure of discovery regarding Officer Roe, this could reveal more evidence of an undercover officer encouraging the criminal acts of an individual on January 6, 2021. There is also the possibility that #FenceCutterBulwark is an unidentified agent who was working with Officer Roe. It is also important to note that #FenceCutterBulwark was photographed near the "Ray Epps Breach Site" as early as 12:31p.m, which is similar to Mr. Copeland's whereabouts.

    d.  During a House Committee on Homeland Security hearing on November 15, 2023, Representative Clay Higgins, R-La., who is an Army veteran and former police officer, stated that white buses unloaded dozens of FBI informants on January 6, 2021, near the Capitol. Mr. Higgins stated, "These buses are nefarious in nature and were filled with FBI informants dressed as Trump supporters deployed unto our Capitol on January 6."[2]

---

[2] This portion of the hearing can be watched at https://www.youtube.com/watch?v=1OvB9kvLR7c

Drawing from the details presented in A(1)(a) and (b), the defense has demonstrated that certain law enforcement personnel may have engaged in actions that could potentially have misled individuals within the crowd. Sections A(1)(c) and (d) raise inquiries about potential additional involvement of law enforcement or other "agents" that might have contributed to Mr. Copeland's actions, which were based on his reliance. If so, Mr. Copeland would seek the defense of entrapment by estoppel. In the absence of government disclosure that would enable the defense to identify clothed or undercover individuals belonging to the specified group as requested in the discovery, Mr. Copeland is unable to assert the defense of entrapment by estoppel.

### IV. Reply to United States' Opposition to Mr. Copeland's Motion for Early Disclosure of All "Jencks Act" Material

In its opposition to Mr. Copeland's Motion for Early Disclosure of all "Jencks Act" Material (*See* ECF Doc. No. 40), the government argues that the Jencks Act under 18 U.S.C. § 3500 already establishes a timeline for production of *Jencks* material and extending that deadline by 30 days is unnecessary. The government then further states that they do not object to a Jencks deadline before trial, but it would need to be more reasonable than 30 days prior to trial.

In *United States v. Guy Reffitt*, 21-cr-32-DLF, October 15, 2021, Minute Order, this Court imposed a *Jencks* requirement of 18 days before the first January 6 trial. In accordance with *United States v. Reffitt,* Mr. Copeland respectfully requests that this Court enter and Order directing the government to disclose all *Jencks* material 18 days prior to trial.

### V. Reply to United States' Opposition to Mr. Copeland's Motion to Require Agents to Retain Rough Notes and Writings

In its response to Mr. Copeland's Motion to Require Agents to Retain Rough Notes and Writings (*See* ECF Doc. No. 41), the government states that they are in agreement and that they

are aware of its *Brady* obligations pursuant to the Jencks Act. The government further states that it intends to fulfill all of their duties.

### VI. Reply to United States' Opposition to Mr. Copeland's Motion to Compel Disclosure of Government Experts

Both the government and the defense have no expert witnesses. If discovery is provided to establish a defense of entrapment by estoppel, the defense may seek an expert.

### VII. Reply to United States' Opposition to Mr. Copeland's Motion to Compel Disclosure of Plea Bargains, Preferential Treatment, and Promises to Government Witnesses

The defense is in agreement that *Giglio* material be released one week prior to trial.

### VIII. Reply to United States' Opposition to Mr. Copeland's Motion for Selective Prosecution

In its opposition to Mr. Copeland's Motion for Discovery and an Evidentiary Hearing in Support of Mr. Copeland's Claim of Selective Prosecution as it Relates to Counts One through Nine, the government claims that Mr. Copeland's claim for selective prosecution fails as he cannot demonstrate clear evidence of misconduct and there is no distinct treatment causing a discriminatory effect.

First, the government argues that Mr. Copeland's claim is meritless as his comparator, Ray Epps, was prosecuted by the government and his case was resolved during the pretrial and precharging phase. As argued in Mr. Copeland's Selective Prosecution Motion, Mr. Epps is a "clear" example of misconduct that shows distinct treatment in an improper way. There is a plethora of video footage of Mr. Epps encouraging people to move forward towards the line of officers and barricades. Additionally, Mr. Epps placed his hand on the metal Trump sign that was then pushed into a group of police officers. Mr. Epps was not charged under Title 18 U.S.C. §

9

111(a)(1) or (b) as Mr. Copeland and other defendants who were charged for similar conduct.[3] This is clearly distinct treatment in an improper way, which had a discriminatory effect, which is a prerequisite to a legal finding of selective prosecution.

The government also acknowledges Mr. Epp's willingness to cooperate by "calling the FBI tip line to self-identify within hours of his photo being posted online and engaging in multiple extensive debriefs with the FBI" (*See* ECF Doc. No. 46 at 12). This is a misleading statement considering Mr. Epps chose to turn himself in and engage with the FBI after his picture had been on the FBI tip line for a few hours and many other individuals identified him publicly.

Lastly, the government contends that Mr. Copeland has not shown that he was prosecuted due to his affiliation with an identifiable group, which, in his case, relates to his political association. Consequently, Mr. Copeland maintains that his assertion of selective prosecution has validity, founded on both discriminatory impact and discriminatory intent.

Undersigned counsel reserves the right to argue said motion at the proper time.

Respectfully submitted,

*s/ Komron Jon Maknoon*
Komron Jon Maknoon, Esquire
PA I.D. NO. 90466

MAKNOON & ASSOCIATES, LLC.
438 Division St.
Sewickley, PA 15143
(412) 201-1802
(412) 774-8424
kjm@maknoon-law.com

---

[3] In the government's opposition, they cite to four other defendants who were charged for similar conduct as Mr. Copeland. *See, e.g.*, *United States v. Sean McHugh*, 21-cr-453-JDB, ECF No. 113 (using the metal sign as a weapon); *United States v. Jose Padilla*, 21-cr-214-JDB, ECF No. 101 (same); *United States v. Neefe*, et al, 21-cr-567- RCL, ECF No. 84 (same); *United States v. Thomas Hamner*, 21-cr-689-ABJ, ECF No. 28 (same).

10

Attorney for Defendant, Jonathan Copeland

Case 1:23-cr-00224-DLF   Document 48   Filed 12/06/23   Page 11 of 11

Attorney for Defendant, Jonathan Copeland