**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 23-cr-224-DLF** |
| | : | |
| **JONATHAN COPELAND,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' TRIAL BRIEF**

The United States, by and through its attorneys, submits this trial brief to summarize the facts of this case and issues for trial, provide the Court and counsel with witness and exhibit lists, and respond to the Court's filings on proposed voir dire and jury instructions.

## I.   STATEMENT OF FACTS

The defendant in this case, Jonathan Copeland, resides in Lima, Ohio. On January 5, 2021, he drove to the District of Columbia. That day, he attended a rally at Freedom Plaza. The following day, on January 6, the defendant dressed in a dark, hooded sweatshirt with a yellow sticker on the left chest area, khaki pants, a plaid collared shirt, black boots, gloves, and safety goggles. At times, the defendant wore a green bandana on his head, and at other times, he wore a red hat.

The defendant attended a portion of the rally at the Ellipse, in support of then-President Donald Trump, a candidate in the 2020 Presidential Election. After attending the rally, the defendant marched with others to the Peace Circle, located on U.S. Capitol grounds. The defendant followed closely behind other rioters as they breached an unmanned section of bike-rack fencing on the outer-edge of the restricted Capitol grounds. After this breach, the defendant moved through the crowd to the front of a line of rioters beside a second bike-rack barrier on Pennsylvania walkway, manned by several U.S. Capitol Police ("USCP") officers protecting the U.S. Capitol complex. At approximately 12:52 p.m., rioters, defendant included, pushed through the second

bike rack barrier and police line in order to move closer to the building. The defendant pushed on the backs of other rioters as the other rioters lifted and pushed the bike rack barriers into the police line. With outstretched arms, the defendant grabbed onto the bike racks and pushed through the bike rack barriers, as other rioters attacked the officers.



*The defendant, circled in yellow*



*The defendant's hand, circled in yellow*

After the rioters trampled over the barriers, they charged forward on Pennsylvania walkway towards the West Plaza of the Capitol building. At approximately 1:40 p.m., the defendant

2

participated in hoisting and pushing a large metal frame on wheels holding an oversized "TRUMP" billboard into a defensive line of Metropolitan Police Department ("MPD") and USCP officers, who were attempting to prevent further advance by the rioters towards the building. Specifically, the defendant placed both hands onto the sign and pushed it into the line of officers.

As will be established at trial, the metal sign frame was approximately eight feet tall and ten feet wide, welded with screws, and supported by large casters that were approximately the size of a person's head.



*The defendant, circled in yellow*



*An overhead screenshot from Closed Circuit Video depicting the struggle between police and rioters*

After pushing the sign against police, and while still on the West Front, the defendant and other rioters began to argue with a photographer in the crowd. The defendant yelled at the photographer and grabbed his sleeve, as a group of rioters attacked the photographer and pushed him off a ledge.



*A screenshot depicting the defendant, circled in yellow, during the initial aggression against a cameraman.*

At approximately 2:25 p.m., the defendant entered the Capitol building through the Senate

Wing Door after changing the green bandana on his head to a red hat.



*The defendant entering the U.S. Capitol*

The defendant traveled through the Crypt, Crypt Lobby, and to the Capitol Visitor Center while inside the building. When he was in the Crypt, a large group of rioters exited the Crypt and charged at officers who were retreating toward the Capitol Visitor Center through the Crypt Lobby. The defendant joined this group of rioters, as they overwhelmed the police and chased them into the Capitol Visitor Center. While in the Crypt lobby, the defendant acknowledged to another rioter that they could possibly be arrested for what they were doing. After spending some time in the Capitol Visitor Center, the defendant returned to the Crypt and encouraged more rioters to come downstairs to the Visitor Center by waiving his arm in a forward motion. The defendant exited the Capitol at approximately 2:41 p.m. through a broken window near the Senate Wing Door. He remained on the Capitol premises for some time, before finally leaving the grounds.

In a non-custodial interview on or about February 10, 2021,[1] the defendant admitted that he was in Washington, D.C. on January 6, 2021, and that he drove with another person from Ohio to the Stop-the-Steal rally near the Ellipse. About three-quarters of the way through the former President's speech, the two left the area and walked to the U.S. Capitol. According to the defendant, he followed a group of people climbing on the scaffolding, entering the U.S. Capitol through an open door. While inside of the Capitol, he claimed to have observed a stand-off with police, saw smoke and tear gas, and heard chanting. After he left the D.C. area, he deleted his social media accounts, and threw away his cell phone.

---

[1] The defendant also separately spoke to the FBI over the telephone on or about February 5, 2021, as well as on August 25, 2022 – after his arrest. The former interview was documented via a serialized report, whereas the latter interview was recorded. To avoid unnecessary exposition, the government's recitation of his one interview above is generally summarized.

II.     **TRIAL PROCEDURE**

The government has no recommended changes concerning the Court's proposed voir dire.

ECF Dkt 53. The trial is scheduled to begin on February 5, 2024, in a trial by jury.

The government expects to call:

USCP Overview witness

USSS Lanelle Hawa

Edgar Tippetts (or other witness relevant to commerce in Washington, D.C.)

USCP Sgt. Tim Lively

MPD Commander Jason Bagshaw

USCP Officer Nikolas Scharkopf

MPD Officer Sarah Beaver

USCP Officer Cameron Sikurenic

USCP Officer Angel Mencia

USCP Officer Tyrone Adonis

FBI Special Agent Elizabeth Tran

III.    **GOVERNMENT EXHIBITS**

The United States' Exhibit List has been filed separately.

IV.     **JURY INSTRUCTIONS AND THE ELEMENTS OF THE CRIMES**

As a result of his conduct, the defendant was indicted by a federal grand jury, charged with

nine counts, including:

1.  Count 1 – Civil Disorder (for  pushing the bike rack fencing on Pennsylvania walkway);

2.  Count 2 – Assault Using a Dangerous Weapon (for pushing the billboard at police);

3.  Count 3– Civil Disorder (for pushing the billboard at police);

4. Count 4 – Entering and Remaining in a Restricted Building or Grounds with a Dangerous Weapon (for unlawfully trespassing with said sign);

5. Count 5 – Disorderly and Disruptive Conduct (for his overall conduct);

6. Count 6 – Engaging in Physical Violence in a Restricted Building or Grounds (for pushing with the sign);

7. Count 7 – Disorderly Conduct in a Capitol Building (for his overall conduct);

8. Count 8 – Physical Violence in the Capitol Grounds or Building (for his overall conduct);

9. Count 9 – Parading, Demonstrating, or Picketing in a Capitol Building (for his overall conduct inside).

The government is in receipt of the Court's proposed jury instructions. ECF Dkt. 52. It has no objection to the proposed general instruction, but requests that the Court give the following jury instructions for the charged offenses:

**COUNT ONE**

**18 U.S.C. § 231 – OBSTRUCTING OFFICERS DURING A CIVIL DISORDER[2]**

(18 U.S.C. §§ 231(a)(3))

Count One charges the defendant with obstructing law enforcement officers during a civil disorder, which is a violation of federal law.

Elements

In order to find each defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with a law enforcement officer on or about 12:53 p.m. on January 6, 2021.

Second, at the time of the defendant's actual or attempted act, such officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

---

[2] *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *United States v. Rupert*, No. 20-cr-104 (D. Minn. Mar. 12, 2021) (ECF No. 81)); 18 U.S.C. § 232; 18 U.S.C. § 6; 5 U.S.C. § 101; 2 U.S.C. §§ 1961, 1967. For other January 6 trials that have used similar instructions, see, *e.g.*, *United States v. Jensen*, No. 21-cr-6 (TJK) (ECF No. 97 at 21-22), *United States v. Webster*, No. 21-cr-208 (APM) (ECF No. 101 at 15-16), and *United States v. Schwartz, et al.*, No. 21-cr-178 (APM) (ECF No. 172 at 17).

Definitions

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia. It also means commerce wholly within the District of Columbia.[3]

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.[4]

The term "department" includes one of the departments of the executive branch (such as the Department of Homeland Security, which includes the United States Secret Service) or the legislative branch. The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States. The term "instrumentality" includes any other formal entity through which the government operates, such as Congress or the United Sates Capitol Police.[5]

---

[3] Modified definition of 18 U.S.C. § 232(2) from jury instructions in *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *see also United States v. Schwartz, et al.*, No. 21-cr-178 (APM) (ECF No. 172 at 18); *United States v. Thomas*, No. 21-cr-552 (DLF) (ECF No. 150 at 21).

[4] *See* 18 U.S.C. § 232(3).

[5] *See, e.g.*, *United States v. Water Supply & Storage Co.*, 546 F. Supp. 2d 1148, 1152 (D. Colo. 2008) ("'When Congress does not define a word, its common and ordinary usage may be obtained by reference to a dictionary.' *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citation omitted). Dictionary definitions of the word 'instrumentality' generally are broad. Black's Law Dictionary defines 'instrumentality' as '[a] thing used to achieve an end or purpose.' Black's Law Dictionary 814 (8th ed. 1999). Webster's Third New International Dictionary defines 'instrumentality' as 'something by which an end is achieved' or "something that serves as an

For the U.S. Capitol Police and Metropolitan Police Department on January 6, 2021, the term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.[6]

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did, said, or perceived.

Attempt

In Count One, the defendant is also charged with attempt to commit the crime of obstructing, impeding or interfering with officers during a civil disorder. An attempt to obstruct officers during a civil disorder is a crime even if the defendant did not actually complete the crime.

---

intermediary or agent through which one or more functions of a controlling force are carried out.' Webster's Third New International Dictionary 1172 (1971).")

[6] *United States v. Schwartz, et al.*, No. 21-cr-178 (APM) (ECF No. 172 at 19). *See, e.g.*, Fifth Circuit Pattern Criminal Jury Instruction No. 2.07; Tenth Circuit Pattern Criminal Jury Instruction No. 2.09; Eleventh Circuit Pattern Criminal Jury Instruction No. O1.1; *United States v. Smith*, 743 F. App'x 943, 949 (11th Cir. 2018) ("Furthermore, the district court instructed the jury regarding the Task Force's duties, stating: 'A member of the U.S. Marshals Regional Fugitive Task Force is a Federal officer and has the official duty to locate and apprehend fugitives.'"); *United States v. Green*, 927 F.2d 1005, 1008 (7th Cir. 1991) ("Given the sweep of the phrase 'official duties,' the district court did not err in instructing the jury that the duties of a federal prison employee, even a food service worker, extend to 'safekeeping, protection and discipline.'"); *United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) ("The instruction states only that the activity of looking for a suspect is official conduct. We find no error in the district court's instruction characterizing this aspect of the marshals' conduct as official duty."); *United States v. Ellsworth*, 647 F.2d 957, 963 (9th Cir. 1981) ("'Instruction No. 10. Among the official duties of officers and agents of the United States Geological Service of the United States Interior Department are inspections of oil drilling apparatus to insure compliance with various Federal laws.' We think the above language of the charge employed by the trial judge reveals no insufficiency in defining the offense.").

In order to find the defendant guilty of attempt to obstruct, impede or interfere with law enforcement officers during a civil disorder, you must find that the government proved beyond a reasonable doubt each of the following elements:

First, that the defendant intended to commit the crime of obstructing officers during a civil disorder, as I have defined that offense above.

Second, that the defendant took a substantial step toward obstructing officers during a civil disorder which strongly corroborates or confirms that the defendant intended to commit that crime.

With respect to the first element of attempt, you may not find the defendant guilty of attempt to commit obstructing officers during a civil disorder merely because the defendant thought about it. You must find that the evidence proved beyond a reasonable doubt that the defendant's mental state passed beyond the stage of thinking about the crime to actually intending to commit it.

With respect to the substantial step element, you may not find the defendant guilty of attempt to obstruct officers during a civil disorder merely because the defendant made some plans to or some preparation for committing that crime. Instead, you must find that the defendant took some firm, clear, undeniable action to accomplish his intent to commit obstructing officers during a civil disorder. However, the substantial step element does not require the government to prove that the defendant did everything except the last act necessary to complete the crime.

Aiding and Abetting[7]

In this case, the government further alleges that the defendant obstructed officers during a civil disorder, as charged in Count One, by aiding and abetting others in committing this offense. This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Count One. Aiding and abetting applies not only to Count One, but to all counts charged in this case. You can refer to the aiding and abetting instruction below to determine whether the defendant aided and abetted the commission of any of the offenses charged in this case.

---

[7] An aiding and abetting instruction may be given even if the indictment does not allege aiding and abetting. *See, e.g.*, *United States v. Ginyard*, 511 F.3d 203, 211 n.6 (D.C. Cir. 2008) ("An indictment need not specifically include an aiding and abetting charge because, whether specified or not, the federal statute creating liability for aiding and abetting is considered embodied in full in every federal indictment.") (cleaned up).

## COUNT TWO

## 18 U.S.C. § 111 – ASSAULTING, RESISTING, OR IMPEDING OFFICERS WITH AND WITHOUT A DANGEROUS WEAPON (METAL SIGN)[8]

### (18 U.S.C. § 111(a)(1) and (b))

Count Two of the Indictment charges the defendant with assaulting, resisting, or impeding an officer or an employee of the United States who was then engaged in the performance of his official duties or any person assisting officers of the United States who are engaged in the performance of their official duties, which is a violation of federal law.

Count Two of the Indictment additionally charges that the defendant, in the commission of such acts, used a deadly or dangerous weapon.

First, I will explain the elements of the substantive offenses, along with its associated definitions. Then, I will explain how to determine each offense, and whether the defendant aided and abetted the commission of the offense.

I am going to instruct you on the first charge and explain the various elements that you must consider. I will also instruct you on the second charge. The jury's verdict sheet will identify the charging decisions you must make.

Elements of Assaulting, Resisting, or Impeding Officers

To find the defendant guilty of this first charge, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer.

---

[8] For January 6 trials that have used similar instructions, see *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 23 and 26); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 22).

Second, the defendant did such acts forcibly.

Third, the defendant did such acts voluntarily and intentionally.

Fourth, the officer or officer(s) that the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his or her official duties or assisting officers of the United States who were then engaged in the performance of their official duties.

Fifth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon.

Definitions

A person acts "forcibly" if he used force, attempted to use force, or threatened to use force against the officer. Physical force or contact is sufficient but actual physical contact is not required. You may also find that a person who has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon that person acts forcibly. In such case, the threat must be a present one.[9]

The term "assault" means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so. To find that the defendant committed an "assault," you must find beyond a reasonable doubt that the defendant intended to inflict or to threaten injury. Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility.[10]

---

[9] *United States v. Taylor*, 848 F.3d 476, 493 (1st Cir. 2017) (The element of 'forcible' action can be met by a showing of either physical contact with the federal agent, or by such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.") (quotation marks omitted) (citing cases). For a January 6 case using this definition, see *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 19).

[10] *United States v. Watts*, 798 F.3d 650, 654 (7th Cir. 2015) ("an assault may also be committed by a person who intends to threaten or attempt to make offensive rather than injurious physical contact with the victim"); *United States v. Acosta-Sierra*, 690 F.3d 1111, 1117 (9th Cir. 2012) ("Because Section 111 does not define assault, we have adopted the common law definition of

The terms "resist," "oppose," "impede," "intimidate," and "interfere with" carry their everyday, ordinary meanings.

An object may be a "deadly or dangerous weapon" in one of two ways. First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or deadly. Such inherently dangerous weapons include guns, knives, and the like. Second, if the object is not inherently or obviously dangerous or deadly, an object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant used it in that manner. In determining whether the object is a "deadly or dangerous weapon," you may consider both the physical capabilities of the object used and the manner in which the defendant used it.[11]

It is not necessary to show that the defendant knew the person being forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with was, at that time, carrying out an

---

assault as either (1) a willful attempt to inflict injury upon the person of another, or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.") (quotation marks omitted); *Comber v. United States*, 584 A.2d 26, 50 (D.C. 1990) (en banc) (explaining that the crime of simple assault "is designed to protect not only against physical injury, but against all forms of offensive touching, . . . and even the mere threat of such touching"); Criminal Jury Instructions for the District of Columbia, No. 4.100 (2022 ed.) ("Injury means any physical injury, however small, including a touching offensive to a person of reasonable sensibility."). For other January 6 trials that have used similar instructions, see *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 30), *United States v. Webster*, 21-cr-208 (APM) (ECF No. 101 at 14), *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 23), and *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 19-20).

[11] *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002) ("For an object that is not inherently deadly . . . the following additional element is required: (4) the object must be capable of causing serious bodily injury or death to another person *and* the defendant must use it in that manner."); *United States v. Smith*, 561 F.3d 934, 939 (9th Cir. 2009) ("An object is a dangerous weapon . . . if it is either inherently dangerous or otherwise used in a manner likely to endanger life or inflict great bodily harm. . . . Inherently dangerous weapons . . . are obviously dangerous objects such as guns, knives, and the like.") (quotation marks omitted); *United States v. Guilbert*, 692 F.2d 1340, 1343 (11th Cir. 1982) ("Thus, the term 'dangerous weapon' is not restricted to such obviously dangerous weapons as guns, knives, and the like, but can include virtually any object given appropriate circumstances."). For another January 6 trial that used a similar instruction, see *United States v. Webster*, No. 21-cr-208 (APM) (ECF No. 101 at 15).

official duty or assisting federal officers in carrying out an official duty so long as it is established beyond a reasonable doubt that the officer was, in fact, carrying out an official duty or assisting a federal officer acting in the course of his duty and that the defendant intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with that officer.[12]

<u>Lesser Offense - Assaulting, Resisting, or Impeding Certain Officers With Physical Contact or the Intent to Commit Another Felony</u>

To find the defendant guilty of the lesser offense of Count Two, that is, assaulting, resisting, or impeding certain officers, you must find the following elements beyond a reasonable doubt:

To find the defendant guilty of this second charge, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with an officer.

Second, the defendant did such acts forcibly.

Third, the defendant did such acts voluntarily and intentionally.

Fourth, the officer or officer(s) that the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his or her official duties or assisting officers of the United States who were then engaged in the performance of their official duties.

Fifth, the defendant made physical contact with that officer(s) or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offenses charged in Counts One, Three, Four, Five, or Six.

---

[12] *United States v. Celentano*, No. 22-cr-186 (TJK) (ECF No. 64 at 12); *United States v. Thomas*, No. 21-cr-552 (DLF) (ECF No. 150 at 30).

<u>Aiding and Abetting</u>

As with Count One, you may consider whether the defendant separately aided and abetted the commission of either crime. This is not a separate offense, but merely another way in which the government alleges that the defendant committed the acts in Count Two. You may refer generally to my instruction of aiding and abetting in Count One in guiding your deliberation.

In order to find the defendant guilty of assaulting, resisting, or impeding officers because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

First, that another person(s) assault, impeded, resisted with a dangerous weapon each of the elements of the offense charged, as I have explained above.

Second, that the defendant knew that such assault, etc., was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense.

Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of assaulting, resisting, or impeding an officer with a dangerous weapon.

Fifth, that the defendant did that act or acts with the intent that others commit the  offense of assaulting, resisting, or impeding an officer with a dangerous weapon.

<u>Order of Deliberations</u>

Now I am going to instruct you as to the order in which you should consider the above offenses. You should consider first whether the defendant is guilty of assaulting, resisting, or impeding officers.

If you find the defendant guilty of that offense, do not go on to the lesser offense. If you find the defendant not guilty, go on to consider whether he is guilty of assaulting, resisting, or impeding certain officers with physical contact or the intent to commit another felony and if, after making all reasonable efforts to reach a verdict on the first charge, you are not able to do so, you are allowed to consider the lesser charge.

This order will be reflected in the verdict form that I will be giving you.

**COUNT THREE**

**18 U.S.C. § 231 – OBSTRUCTING OFFICERS DURING A CIVIL DISORDER**

(18 U.S.C. §§ 231(a)(3))

Count Three charges the defendant with obstructing law enforcement officers during a civil disorder, which is a violation of federal law.

The instructions for Count Three are the same as those in Count One, with one difference: in the first element of Civil Disorder for Count Three, the government must prove beyond a reasonable doubt that the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with a law enforcement officer on or about 1:41 p.m. on January 6, 2021.

Otherwise, the same instructions for Count One apply.

**COUNT FOUR**

**18 U.S.C. § 1752 – ENTERING OR REMAINING IN A RESTRICTED BUILDING OR GROUNDS[13] WITH A DEADLY OR DANGEROUS WEAPON (METAL SIGN)**

(18 U.S.C. § 1752(a)(1) and (b)(1)(A))

Count Four charges the defendant with entering or remaining in a restricted building or grounds with a deadly or dangerous weapon, which is a violation of federal law. I am going to instruct you on this charge and explain the various elements that you must consider. I will also instruct you on the lesser-included offense. After I give you the elements of these crimes, I will tell you in what order you should consider them.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.

Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.[14]

---

[13] 18 U.S.C. §§ 1752, 3056; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021). For a January 6 case using this instruction, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6).
[14] *United States v. Jensen*, No. 21-cr-6 (TJK) (ECF No. 97 at 34); *United States v. Schwartz, et al*, No. 21-cr-178 (APM) (ECF No. 172 at 24).

Definitions

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the instructions for Count One.

The term "deadly or dangerous weapon" has a similar meaning to the meaning in Count Two. An object may be considered a "deadly or dangerous weapon" for one of two reasons. First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or deadly. Second, an object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant carried it with the intent that it be used in a manner capable of causing serious bodily injury or death. However, for purposes of this offense, unlike the offense in Counts Two and Three, the defendant need not have actually used the object in that manner.

Lesser Included Offense

In order to find the defendant guilty of the lesser offense of Count Five, that is, entering or remaining in a restricted building or grounds, you must find the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.

<u>Order of Deliberations</u>

Now I am going to instruct you as to the order in which you should consider the above offenses. You should consider first whether the defendant is guilty of entering or remaining in a restricted building or grounds with a deadly or dangerous weapon.

If you find the defendant guilty of that offense, do not go on to the lesser offense. If you find the defendant not guilty, go on to consider whether he is guilty of entering or remaining in a restricted building or grounds and if, after making all reasonable efforts to reach a verdict on the first charge, you are not able to do so, you are allowed to consider the lesser charge.

This order will be reflected in the verdict form that I will be giving you.

## COUNT FIVE

## 18 U.S.C. § 1752 – DISORDERLY OR DISRUPTIVE CONDUCT IN A RESTRICTED BUILDING OR GROUNDS[15] WITH A DEADLY OR DANGEROUS WEAPON (METAL SIGN)

## (18 U.S.C. § 1752(a)(2) and (b)(1)(A))

Count Five charges the defendant with disorderly or disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon which is a violation of federal law. I am going to instruct you on this charge and explain the various elements that you must consider. I will also instruct you on the lesser-included offense. After I give you the elements of these crimes, I will tell you in what order you should consider them.

<u>Elements</u>

In order to find each of the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

Fourth, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.[16]

---

[15] 18 U.S.C. §§ 1752, 3056; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021). For a January 6 case using this instruction, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6).

[16] *United States v. Jensen*, No. 21-cr-6 (TJK) (ECF No. 97 at 37); *United States v. Schwartz, et al,*, No. 21-cr-178 (APM) (ECF No. 172 at 25); *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 22); *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at 22), *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 16).

Definitions

"Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety.[17] Disorderly conduct includes when a person acts in such a manner as to cause another person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, or is unreasonably loud and disruptive under the circumstances.[18]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[19]

The terms "restricted building or grounds," "knowingly," and "deadly and dangerous weapon" have the same meanings described in the instructions for Count Four.

Lesser Included Offense

In order to find the defendant guilty of the lesser offense of Count Five, that is, disorderly or disruptive conduct in a restricted building or grounds, you must find the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

---

[17] *United States v. Grider*, 21-cr-22 (CKK) (ECF No. 150 at 24) ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").

[18] *United States v. Schwartz, et al,*, No. 21-cr-178 (APM) (ECF No. 172 at 27).

[19] Redbook 6.643.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

<u>Order of Deliberations</u>

Now I am going to instruct you as to the order in which you should consider the above offenses. You should consider first whether the defendant is guilty of entering or remaining in a restricted building or grounds with a deadly or dangerous weapon.

If you find the defendant guilty of that offense, do not go on to the lesser offense. If you find the defendant not guilty, go on to consider whether he is guilty of entering or remaining in a restricted building or grounds and if, after making all reasonable efforts to reach a verdict on the first charge, you are not able to do so, you are allowed to consider the lesser charge.

This order will be reflected in the verdict form that I will be giving you.

**COUNT SIX**

**ENGAGING IN PHYSICAL VIOLENCE IN A RESTRICTED BUILDING OR GROUNDS WITH A DEADLY OR DANGEROUS WEAPON (METAL SIGN)[20]**

(18 U.S.C. § 1752(a)(4), (b)(1)(A))

Count Six charges the defendant with engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, which is a violation of federal law. I am going to instruct you on this charge and explain the various elements that you must consider. I will also instruct you on the lesser-included offense. After I give you the elements of these crimes, I will tell you in what order you should consider them.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds.

Second, the defendant did so knowingly.

Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

Definitions

The term "act of physical violence" means any act involving an assault or other infliction of bodily harm on an individual; or damage to, or destruction of, real or personal property.

---

[20] *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 30); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 34); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 40); *United States v. Christensen*, 21-cr-455 (RCL) (ECF No. 72 at 18); *United States v. McAbee*, 21-cr-35 (RC) (ECF No. 376, at 40-41).

The terms "restricted building or grounds," "knowingly," and "deadly and dangerous weapon" have the same meanings described in the instructions for Count Four.

<u>Lesser-Included Offense</u>

In order to find the defendant guilty of the lesser offense of Count Six, that is, engaging in physical violence in a restricted building or grounds, you must find the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence against a person in, or in proximity to, a restricted building or grounds.

Second, the defendant did so knowingly.

<u>Order of Deliberations</u>

Now I am going to instruct you as to the order in which you should consider the above offenses. You should consider first whether the defendant is guilty of engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon. If you find the defendant guilty of that offense, do not go on to the lesser-included offense. However, if you find the defendant not guilty, go on to consider whether the defendant is guilty of engaging in physical violence in a restricted building or grounds. And if, after making all reasonable efforts to reach a verdict on the first charge, you are not able to do so, you are allowed to consider this lesser-included charge.

This order will be reflected in the verdict form that I will be giving you.

## COUNT SEVEN

## DISORDERLY CONDUCT IN A CAPITOL BUILDING OR GROUNDS[21]

### (40 U.S.C. § 5104(e)(2)(D))

Count Seven charges the defendant with disorderly and disruptive conduct in a Capitol Building or Grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

Third, the defendant acted willfully and knowingly.

Definitions

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. While the government must show that a defendant knew that the conduct was unlawful, the government does not need to prove that the defendant was aware of the specific law that his conduct violated.[22]

---

[21] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 22); *United States v. Jenkins*, 21-cr-245 (APM) (ECF No. 78 at 31); *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 40); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40); *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 28); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 10-11).

[22] As the Supreme Court has explained, "willfully" is "a word of many meanings whose construction is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191 (1998) (internal quotation marks omitted). "As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a bad purpose. In other words, in order to

The term "disorderly or disruptive conduct" has the same meaning described in the instructions for Count Five. The term "knowingly" has the same meaning described in the instructions for Count One.

The term "Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C. The "Capitol Grounds" includes the red area demarcated in Government's Exhibit 1.

---

establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Id.* at 191-92 (internal quotation marks omitted).

**COUNT EIGHT**

**ACT OF PHYSICAL VIOLENCE AT THE CAPITOL BUILDING OR GROUNDS[23]**

(40 U.S.C. § 5104(e)(2)(F))

Count Eight charges the defendant with an act of physical violence in the Capitol Building or Grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

Second, the defendant acted willfully and knowingly.

Definitions

The term "act of physical violence" means any act involving an assault or other infliction or threat of infliction of death or bodily harm on an individual; or involving damage to, or destruction of, real or personal property. For purposes of this offense, unlike the offense in Count Four, the threat of infliction of bodily harm is sufficient to meet this definition.

The terms "Capitol Buildings" and "Capitol Grounds" have the same meaning described in the instructions above.

---

[23] *United States v. Alberts*, 21-cr-26 (CRC) (ECF No. 147 at 20); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 36); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 43), *United States v. Christensen*, 21-cr-455 (RCL) (ECF No. 72 at 19). *See also United States v. Jones*, 21-cr-213 (RJL) (ECF No. 75 at 9-10) (notes for bench verdict setting out elements and defining "act of physical violence" to include destruction of property).

## COUNT NINE

## PARADING, DEMONSTRATING, OR PICKETING IN A CAPITOL BUILDING[24]

(40 U.S.C. § 5104(e)(2)(G))

Count Nine charges the defendant with parading, demonstrating, or picketing in a Capitol Building, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

Second, the defendant acted willfully and knowingly.

Definitions

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[25] The remaining terms are defined in the instructions above.

---

[24] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 23); *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 42); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40); *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 7); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 29); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 11); *United States v. Horn*, 21-cr-301 (TJK) (ECF No. 82 at 19).

[25] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 23); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 44). *See also Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

## AIDING AND ABETTING LIABILITY

As stated earlier, aiding and abetting liability applies to each count above. A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal. It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone else and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of any of the counts because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

First, that other persons committed the elements of any and each crime, as I have explained above.

Second, that the defendant knew that the crime was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the crime.

Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the crime.

Fifth, that the defendant did that act or acts with the intent that others commit the crime.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, you must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the crime. The defendant's

act or acts need not further aid, assist, facilitate, or encourage every part or phase of the crime charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of obstructing law enforcement officers during a civil disorder as an aider and abettor. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

## V.      EXHIBITS

The government provided a copy of the exhibits on January 5, 2024. Assuming this matter goes to trial on February 5, 2024, the government will finalize the exhibits and provide counsel with a copy of the final exhibits and list by February 1, 2024. The defendant has provided no exhibit list or exhibits.

## VI.     PENDING MOTIONS

The government is aware of no pending motions at this juncture.

Dated: January 17, 2024                    Respectfully Submitted,

                                           MATTHEW M. GRAVES
                                           United States Attorney

                            By:     *s/ Alexandra F. Foster*

                                           ALEXANDRA F. FOSTER
                                           D.C. Bar No. 470096
                                           KYLE R. MIRABELLI
                                           N.Y. Bar No. 5663166
                                           Assistant United States Attorneys
                                           601 D Street, N.W.
                                           Washington, D.C. 20579